IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, | ) ) ) | |
| Plaintiff, | ) ) | Misc. Case No.  19-mc-271 |
| vs. | ) ) ) ) | Underlying Case in the U.S. District Court for the District of Columbia, Civil Action No. 1:05-cv-01548-RCL |
| RUSSIAN FEDERATION, RUSSIAN MINISTRY OF CULTURE AND MASS COMMUNICATION, RUSSIAN STATE LIBRARY and RUSSIAN STATE MILITARY ARCHIVE, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW OF NON-PARTY STATE DEVELOPMENT BANK VEB.RF
IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA DUCES TECUM
AND AD TESTIFICANDUM**

DENTONS US LLP
Kenneth J. Pfaehler
Arthur R. Bregman (*pro hac vice* application forthcoming)
Nicholas Petts (*pro hac vice* application forthcoming)
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 408-6468

*Attorneys for Non-Party State Development Bank VEB.RF*

*May 24, 2019*

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... ii

Introduction ..................................................................................................................... 1

Background ....................................................................................................................... 2

I.      Procedural History .................................................................................................. 2

II.     State Development Bank VEB.RF ......................................................................... 5

Argument ......................................................................................................................... 8

I.      The Court Should Quash Plaintiff's Subpoena Because It Seeks Irrelevant
Information, Is Overbroad and Unduly Burdensome, and Implicates Substantial
Concerns for U.S. Foreign Policy ......................................................................... 8

      A.     The Subpoena Requests Information Irrelevant to Satisfying the Interim
Judgment and Therefore Violates Rules 26 and 69 .................................. 9

            1.     VEB's U.S. Assets Cannot Be Used to Satisfy The Interim
Judgment ..................................................................................... 10

            2.     Plaintiff's Discovery Requests Are Also Irrelevant Because
Plaintiff Cannot Attach Any Other Assets For Which It Seeks
Discovery In Order To Enforce The Interim Judgment .......................... 17

      B.     Plaintiff's Discovery Requests Are Overly Broad, Oppressive, And
Unduly Burdensome ................................................................................. 20

      C.     Enforcing the Subpoena Could Impact Substantial Foreign Policy Interests ....... 22

II.     If The Court Does Not Quash The Subpoena This Court Should Stay Compliance
With The Subpoena Pending Resolution of the Objections of the United States ............. 23

Conclusion ..................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Af-Cap, Inc. v. Republic of Congo*,
    462 F.3d 417 (5th Cir. 2006), *cert. dismissed*, 549 U.S. 1275 (2007)................................19

*Agudas Chasidei Chabad of United States v. Russian Fed'n*,
    915 F. Supp. 2d 148 (D.D.C. 2013) .................................................................................19

*Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193 (2d Cir. 2016)...................................11

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ...............................19

*Avelar v. J. Cotoia Const., Inc.*,
    No. 11-cv-2172, 2011 U.S. Dist. LEXIS 126487 (E.D.N.Y. Nov. 2, 2011) ..........................18

*Bayer & Willis Inc. v. Republic of the Gambia*, 283 F. Supp. 2d 1 (D.D.C. 2003)................11, 17

*Brown v. Brockett*,
    No. 17-mc-2931-MKB-SJB, 2018 WL 3625341 (E.D.N.Y. July 6, 2018) .............................9

*Buie v. District of Columbia*, 327 F.R.D. 1 (D.D.C. 2018) .........................................................22

*Caisson Corp. v. Cty. W. Bldg. Corp.*, 62 F.R.D. 331 (E.D. Pa. 1974) .........................................9

*Citizens Union of City of New York v. Attorney Gen. of New York*,
    269 F. Supp. 3d 124 (S.D.N.Y. 2017).............................................................................20

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380,
    398 (D. Del. 2018), *appeal filed*, Aug. 15, 2018, 3d Cir. Case No. 18-2797 ...................12, 14

*De Letelier v. Republic of Chile*, 748 F.2d 790 (2d Cir. 1984)....................................................12

*Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009)........................................................................14

*Elise Trust v. United States SEC*,
    No. 10-mc-724, 2011 U.S. Dist. LEXIS 157867 (D.D.C. January 10, 2011) .........................9

*EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78 (2d Cir. 2015)...... 1-2, 12, 13, 14

*Enterprise Tools, Inc. v. Exp.-Imp. Bank of the U.S.*,
    564 F. Supp. 761, 764 (E.D. Ark. 1983).............................................................................8

*Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5 (D.D.C. 2006)...........................................15, 16

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
637 F.3d 373 (D.C. Cir. 2011) ............................................................19

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ............................................1, 11, 12, 13, 14, 15

*Flatow v. Islamic Republic of Iran*, 308 F.3d 1065 (9th Cir. 2002) ................ 11-12, 15

*Herbert v. Lando*, 441 U.S. 153 (1979) ............................................................8

*In re Grand Jury Subpoena*, 749 F. App'x 1 (D.C. Cir. 2018) ....................................19

*Linder v. NSA*, 94 F.3d 693 (D.C. Cir. 1996) ............................................ 8-9

*Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*,
No. 11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751
(E.D. Ky. Nov. 20, 2012) ............................................................16

*Micula v. Gov't of Romania*,
No. 15-mc-0107 (S.D.N.Y. Sept. 3, 2015), ECF No. 83 ....................................18

*Owens v. Republic of Sudan*, 141 F. Supp. 3d 1 (D.D.C. 2015) ....................................17

*PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp. 2d 67 (D.D.C. 2008) ................23

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
9 F. Supp. 2d 300 (S.D.N.Y. 1998) ............................................................12

*Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) ....................10, 17

*Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) ............................ 1, 13, 14-15

*Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111 (D. Conn. 2005) ...........21

*Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv.,
Inc.*, 148 F.R.D. 662 (M.D. Fla. 1993) ............................................................16

*United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22 (D.D.C. 2012)............17

*Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983) ....................................22

*Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375 (5th
Cir. 1992) ............................................................14

*Walters v. Indus. & Commercial Bank of China, Ltd.*,
651 F.3d 280 (2d Cir. 2011).........................................................18

## Statutes

12 U.S.C.§ 635k ....................................................................................................7

12 U.S.C. s. 635(a)(1) ..........................................................................................7, 8

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ............................. *passim*

28 U.S.C. § 1609 ....................................................................................................19

28 U.S.C. § 1610 ...............................................................................15, 16, 17, 18, 19, 20

28 U.S.C. § 1611 ....................................................................................................19

NDAA § 1083(b)(3)(D), 122 Stat. 341-42.................................................................. 15

Federal Law of the Russian Federation of 17 May 2007, No. 82-FZ (as amended) .....1, 5, 6, 7, 10

Federal Law of the Russian Federation of 1 December 1996, No. 7-FZ................................10, 11

Civil Code of the Russian Federation, Article 56 ........................................................11

Civil Code of the Russian Federation, Article 126 ......................................................11

## Rules

Fed. R. Civ. P. 26...............................................................................................8, 9, 10

Fed. R. Civ. P. 26(b)(1)...........................................................................................9

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................................20

Fed. R. Civ. P. 26(c) ................................................................................................8

Fed. R. Civ. P. 45(d)(3)(A)(iv) ...............................................................................9, 20

Fed. R. Civ. P. 69.............................................................................................9, 14, 15

Non-party State Development Bank VEB.RF ("VEB") submits this memorandum of law in support of its motion to quash the Plaintiff's subpoena *duces tecum* and *ad testificandum*, dated March 26, 2019 (the "Subpoena").[1]  In support of the motion, VEB states as follows:

## INTRODUCTION

This motion to quash involves a subpoena issued from the United States District Court for the District of Columbia. The Subpoena seeks discovery in connection with an attempt to enforce an interim judgment of accrued sanctions (the "Interim Judgment") entered in September, 2015 against the Russian Federation, the Russian Ministry of Culture and Mass Communication, the Russian State Library and the Russian State Military Archive (collectively, the "Federation Defendants").  VEB is not a party to that lawsuit.  No judgment or sanctions have been entered against VEB.  VEB has had no role at any time in proceedings related to the Chabad lawsuit.

The document requests and deposition topics identified in the Subpoena are irrelevant, because they cannot lead the Plaintiff to assets that might satisfy the Interim Judgment.  Duly created instrumentalities of a foreign state are accorded a strong presumption of independent status. *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822–23 (2018); *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983).  Accordingly, VEB could not be liable for the Interim Judgment unless the Russian Federation "exercises significant and repeated control" over VEB's "day-to-day operations."  *EM Ltd. v. Banco Cent. de la Republica*

---

[1]  The subpoena is attached as Exhibit 1 to the accompanying Transmittal Declaration of Kenneth J. Pfaehler, May 24, 2019 (the "Pfaehler Decl.")  The subpoena was issued to "Vnesheconombank".  The previous name of the bank was "State Corporation Bank for Development and Foreign Economic Affairs (Vnesheconombank)."  In 2018, the bank was renamed "State Development Corporation VEB.RF."  The name change did not reflect a reorganization of the bank. Federal Law of the Russian Federation of 17 May 2007, No. 82-FZ (as amended) ("Law 82-FZ"), at art. 21, §§ 1, 1.1.  A copy of Law 82-FZ is attached to the Pfaehler Transmittal Declaration as Exhibit 2.  We refer to the bank herein as "VEB."

*Argentina*, 800 F.3d 78, 99 (2d Cir. 2015). The Russian Federation has no such power and cannot interfere in the business operations of VEB as a matter of law. Pfaehler Decl. ex. 2, Law 82-FZ art. 6.1. Because VEB can have no liability for the Interim Judgement, the discovery sought from VEB, a stranger to the Chabad proceedings, is irrelevant and unduly burdensome.[2]

## **BACKGROUND**

### I. **PROCEDURAL HISTORY**

Plaintiff initiated this action against the Federation Defendants in 2005, seeking the return of books and manuscripts (the "Collection"). The Federation Defendants initially appeared and contested the district court's jurisdiction, and later withdrew from the litigation in 2009.[3]

On July 30, 2010, the district court entered a default judgment against the Federation Defendants and directed them to transfer the Collection to Plaintiff.[4] When the Federation Defendants did not do so, the Plaintiff asked the Court to find them in contempt and impose sanctions in the form of a "fine payable to the Plaintiff" until the Collection was transferred.[5]

In August, 2012, at the district court's invitation, the United States submitted a Statement of Interest opposing the entry of monetary sanctions against Russia. The United States explained that the Foreign Sovereign Immunities Act[6] does not authorize a district court to compel the

---

[2] VEB reserves all rights and defenses, and does not waive any immunities, by seeking to quash the Subpoena. VEB also does not, and cannot, waive any sovereign immunities or speak on behalf of the Russian Federation or other sovereign agencies.

[3] *See* Mot. to Withdraw Appearance as Counsel of Record, *Agudas Chasidei Chabad of U.S. v. Russian Federation, et al.*, No. 05-cv-01548-RCL (D.D.C. July 28, 2009) (this D.D.C. action is cited herein as "*Chabad v. Russian Federation*"), ECF No. 72.

[4] Order Granting Motion for Entry of Default Against All Defendants, *Chabad v. Russian Federation* (July 30, 2010), ECF No. 80.

[5] Plaintiff's Motion for Civil Contempt Sanctions, Proposed Order at 2, *Chabad v. Russian Federation* (April 4, 2011), ECF No. 92-2.

[6] The Foreign Sovereign Immunities Act is codified at 28 U.S.C. §§ 1330, 1332, 1291(f), 1441(d) & 1602-1611, and is referred to herein as "FSIA."

Federation Defendants' compliance with an order directing the transfer of property that they hold within their own sovereign territory.[7]  The United States also advised that civil contempt sanctions would both "risk damage to significant foreign policy interests" and undermine any possible amicable diplomatic resolution to this dispute.[8]

Nonetheless, on January 16, 2013, the district court granted Plaintiff's motion for civil contempt sanctions and fined the Federation Defendants $50,000 a day, payable to Plaintiff, until they complied with the court's order to transfer the Collection to Plaintiff.[9]

In January 2014, Plaintiff moved for an interim judgment against Russia for the accrued sanctions.[10]  The United States filed another Statement of Interest on February 21, 2014, which opposed entry of an interim judgment for the same reasons as the initial sanctions order.[11]  On September 10, 2015, the Court granted Plaintiff's motion for an interim judgment of accrued sanctions and ordered that Plaintiff may recover $43.7 million from the Federation Defendants.[12]

In an effort to enforce the Interim Judgment, Plaintiff served a subpoena *duces tecum* and *ad testificandum* on Sberbank CIB, USA in April 2015.[13]  Plaintiff then served subpoenas on JPMorgan Chase, Citibank and Citigroup in December 2015, demanding documents about, among other things, accounts maintained in or outside the United States by or on behalf of the "Russian Federation," as well as "any and all of its Agencies and Instrumentalities,

---

[7]  *See* Statement of Interest of the United States, at 4, *Chabad v. Russian Federation* (Aug. 29, 2012), ECF No. 111. A copy of this Statement of Interest is attached as Exhibit 3 to the Pfaehler Transmittal Declaration.

[8]  *Id.* at 10.

[9]  Order Granting Motion for Sanctions, *Chabad v. Russian Federation* (Jan. 16, 2013), ECF No. 115.

[10]  Plaintiff's Motion for Interim Judgment of Accrued Sanctions, *Chabad v. Russian Federation*, ECF No. 127.

[11]  *See* Statement of Interest of the United States, ECF No. 134.  A copy of this Statement of Interest is attached as Exhibit 4 to the Pfaehler Transmittal Declaration.

[12]  *See* Order Granting Motion for Order for Interim Judgment of Accrued Sanctions, *Chabad v. Russian Federation*, ECF No. 144.

[13]  *See* Notice of Service of Subpoena, *Chabad v. Russian Federation*, ECF No. 140.

representatives, affiliates, subsidiaries, predecessors, successors, alter-egos, assigns, and political subdivisions . . . and all other Persons acting or purporting to act for or on behalf of the Russian Federation," including numerous Russian officials.[14]  On January 27, 2016, Plaintiff registered the Interim Judgment in the District Court for the Southern District of New York.[15]  Pursuant to Plaintiff and the non-party banks' stipulation, and subsequent orders from the New York court, compliance with Plaintiff's subpoenas on the non-party banks has been stayed pending resolution of certain issues before this Court.[16]

On February 3, 2016, the United States filed another Statement of Interest in the D.C. Court, discussing why Plaintiff's subpoenas to the financial institutions were improper, including that Plaintiff's inability "to attach any Russian assets held in the United States or abroad to satisfy that judgment" meant that discovery of "information about those assets [was] irrelevant to post-judgment proceedings."[17]

Plaintiff then filed a motion requesting the D.C. court to enter an additional judgment for increased sanctions on Russia.[18]  The United States subsequently filed a Supplemental Statement of Interest, which again reiterated that "it is clear that the sanctions judgment itself is

---

[14]  Memorandum of Law of Non-Parties JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A. in Opposition to Plaintiff's Amended Motion to Lift the Stay of Discovery and Transfer, at 7, filed in *Agudas Chasidei Chabad of U.S v. Russian Federation, et. al.*, No. 16-mc-00040-Pl (S.D.N.Y. May 7, 2018), ECF No. 34.

[15]  *See* Registration of Foreign Judgment, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 16-mc-00040-Pl (S.D.N.Y. January 27, 2016), ECF No. 1.

[16]  *See* Conference Tr. at 5:18-21, 11:5-8, *Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al.*, No. 16-mc-00040-Pl (S.D.N.Y. May 18, 2018), ECF No. 39.

[17]  Statement of Interest of the United States at 6, *Chabad v. Russian Federation*, ECF No. 151 (Pfaehler Decl. ex. 5).

[18]  Plaintiff's Application for Additional Judgment, *Chabad v. Russian Federation*, ECF No. 153.

unenforceable against any assets," and "thus no discovery is proper."[19]  Almost two years later, on March 13, 2018, Plaintiff moved for increased sanctions.[20]

Although the Court has not yet ruled on the March 2018 motion for increased sanctions, Plaintiff again requested that the Court grant that motion on June 6, 2018.[21]  Most recently, on March 25, 2019, Plaintiff moved for an Order to Show Cause directed to the United States, in response to the Court's instruction that the United States "reassess its position with respect to this litigation, and notify this Court of its updated position in a timely manner."[22]

## II.     STATE DEVELOPMENT BANK VEB.RF

VEB is a governmental organization established to promote the economic development of the Russian private sector, specifically supporting exports of Russian industrial products including goods, work and services.  VEB participates in managing development institutions, concludes agreements with them on coordination of activities and/or interaction, and elaborates joint work procedures ensuring the integrated use of financial and non-financial tools for project support.[23]  VEB invests in and provides financing to Russian companies and projects in a number of different industries.  Pfaehler Decl. ex. 2, Law 82-FZ, art. 3.3.1 *et seq*.  The bank helps coordinate activities between other development institutions in Russia, including the VEB group, Russian Export Center AO, Russian Agency for Export Credit and Investment Insurance AO, State Specialized Russian Export-Import Bank AO, and HOUSE.RF AO.  *Id.* art. 3.3.7.  VEB

---

[19]  Supplemental Statement of Interest of the United States at 7, ECF No. 155 (Pfaehler Decl. ex. 5).

[20]  *See* Plaintiff's Motion. for Increased Sanctions, *Chabad v. Russian Federation*, ECF No. 168.

[21]  *See* Plaintiff's Request for Relief on Plaintiff's Motion for Increased Sanctions, *Chabad v. Russian Federation,* ECF No. 171.

[22]  Plaintiff's Motion for Order to Show Cause at 2, *Chabad v. Russian Federation*, ECF No. 175; *see also* Motions Hearing Tr. at 15:13-14, *Chabad v. Russian Federation*, ECF No. 164.

[23]  Pfaehler Decl. ex. 2, Law 82-FZ, art. 3.5.2

provides financial support and issues guarantees to development institutions to ensure they can fulfill their obligations.[24]

VEB is formed pursuant to Russian federal law, accordingly to which VEB operates independently from the government of the Russian Federation. The Russian Federation's interactions with VEB are expressly limited by Russian federal law. The Russian Federation formed VEB as a corporation and contributed VEB's start-up capital (*id.* art. 18), but the Federation does not possess the typical attributes, rights and benefits of corporation ownership. Russian federal law expressly provides that "Government authorities of the Russian Federation, constituent entities of the Russian Federation and local government authorities may not interfere in VEB.RF's activities aimed at achieving its business purposes" unless authorized by law. *Id.* art. 6.1. VEB's enabling laws clearly distinguish between VEB and the "Government of the Russian Federation," and specifically enumerates the few rights the Government possesses with respect to VEB. *Id.* art. 6.1.2. The Russian Federation's most significant right is simply the right to appoint and remove members of its supervisory board. *Id.* But consistent with Russian federal law the Government of the Russian Federation cannot and does not direct VEB's day-to-day business operations and affairs. *Id.*

Russian federal law expressly provides that VEB's assets are property it owns separately from the Russian Federation. *Id.* art. 5.1.1 By statute, VEB cannot be held liable for any debts of the Russian Federation. "VEB.RF shall not be liable for any obligations of the Russian Federation. The Russian Federation shall not be liable for VEB.RF's obligations." *Id.* art. 5.1.2

VEB is not authorized to use its assets for any purpose other than the economic development objectives set out in its enabling laws. *Id.* art. 5.1.3 VEB does not distribute its

---

[24] Pfaehler Decl. ex. 2, Law 82-FZ, art. 3.5.3

profits to the Russian Federation; it is legally required to reinvest all profits in its development projects. *Id.* art. 3.2. The only circumstance in which VEB assets could become property of the Russian Federation is if VEB's supervisory board adopted a formal decision to transfer part of its assets to the Treasury of the Russian Federation. *Id.* art. 12.1.21.

Nor does VEB hold assets of the Russian Federation that Chabad can attach. As its chartering statute reflects, that is not VEB's function. VEB does not function as a general depository or commercial banking institution like JPMorgan Chase Bank or Citibank. VEB conducts a limited number of banking functions for the sole purpose of facilitating its development projects. *See id.* art. 3.7. In this capacity it maintains deposit accounts at foreign and domestic financial institutions for the benefit of corporate entities and projects it is financing. *Id.* art. 3.7.2. But VEB does not hold funds for the Russian Federation anywhere in the United States.

As the foregoing description reflects, VEB functions analogously to the U.S. Export-Import Bank ("Eximbank"), although it is further removed from being an instrumentality of the Russian state than Eximbank is with respect to the U.S. government. Comparing provisions of Russian law relating to VEB with US Eximbank's Charter illustrates that VEB has more separation from the Russian government than Eximbank has from the US government.[25] While VEB has the power to decide to approve partial transfers to the Treasury of the Russian Federation, it is under no obligation to do so; meanwhile, the U.S. Eximbank Charter mandates

---

[25] Eximbank is an agent of the United States government. *See* U.S. Export-Import Bank Charter, 12 U.S.C. § 635(a)(1). Eximbank's purpose is to "aid in financing and to facilitate exports of goods and services, imports, and the exchange of commodities and services between the United States or any of its territories or insular possessions and any foreign country or the agencies or nationals of any such country, and in so doing to contribute to the employment of United States workers." *Id.* The first $100 million of losses are borne by the bank, but the second $100 million is borne by the Secretary of the Treasury. 12 U.S.C.§ 635k. All guarantees and insurance issued by Eximbank are contingent obligations backed by the full faith and credit of the Government of the United States of America. *Id.*

that earnings shall be deposited into the Treasury.[26]  Nonetheless, "Eximbank is indeed a bank

that functions independently of the general control of the United States Treasury.  Eximbank is in

control and possession of its own assets and liabilities."  *Enterprise Tools, Inc. v. Exp.-Imp. Bank

of the U.S.*, 564 F. Supp. 761, 764 (E.D. Ark. 1983).  Even more than Eximbank, VEB is a bank

that functions independently of the general control of its sovereign and is in control and

possession of its own assets and liabilities.

## ARGUMENT

The discovery Plaintiff seeks through the Subpoena is improper, because it would not

lead to the identification of any executable assets and thus is irrelevant as a matter of law.

Plaintiff's requests also are overbroad, oppressive and unduly burden VEB, which is not a party

in the dispute between Plaintiff and the Federation Defendants.  And, as the United States has

repeatedly asserted, the discovery sought in the Subpoena implicates important U.S. foreign

policy interests and could pose significant risks to U.S.-Russia relations.

I.    **THE COURT SHOULD QUASH PLAINTIFF'S SUBPOENA BECAUSE IT
      SEEKS IRRELEVANT INFORMATION, IS OVERBROAD AND UNDULY
      BURDENSOME, AND IMPLICATES SUBSTANTIAL CONCERNS FOR U.S.
      FOREIGN POLICY**

The "district courts should not neglect their power to restrict discovery where 'justice

requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue

burden or expense.'"  *Herbert v. Lando*, 441 U.S. 153, 177 (1979) (quoting Fed. R. Civ. P.

26(c)). "With this authority at hand, judges should not hesitate to exercise appropriate control

over the discovery process."  *Id.*  The Court has "broad discretion in determining whether a

subpoena" satisfies the basic standards for discovery articulated in the Federal Rules.  *Linder v.*

---

[26]  Net earnings of Eximbank are used for dividends on capital stock, and such deposits are deposited into the
Treasury as miscellaneous receipts. 12 U.S.C. § 635(a)(1).

*NSA*, 94 F.3d 693, 695 (D.C. Cir. 1996). Discovery should be limited where "the burden or expense . . . outweighs its likely benefit," where the information sought is not relevant to a party's claims, or where the requested discovery "subjects a person to undue burden." Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 45(d)(3)(A)(iv).

### A. The Subpoena Requests Information Irrelevant to Satisfying the Interim Judgment and Therefore Violates Rules 26 and 69

The Subpoena requests information that is not relevant to satisfying the Interim Judgment, and therefore should be quashed for breaching Federal Rules of Civil Procedure 26 and 69. Post-judgment discovery related to VEB's U.S. assets, in order to enforce the Interim Judgment, is irrelevant and misplaced. VEB is not the judgment debtor here; nor is VEB owned or controlled by the Federation Defendants, and thus VEB's assets cannot be used to satisfy a judgment entered against them. For purposes of post-judgment discovery under Rule 69, the "information relevant to [a party's attempt to collect] would be (1) the location of the judgment debtor's assets which would satisfy the judgment and (2) the source of those assets." *Elise Trust v. United States SEC*, No. 10-mc-724, 2011 U.S. Dist. LEXIS 157867, at *6 (D.D.C. January 10, 2011) (alteration in original). As with "all discovery under the Federal Rules 'the inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons.'" *Brown v. Brockett*, No. 17-mc-2931-MKB-SJB, 2018 WL 3625341, at *8 (E.D.N.Y. July 6, 2018) (quoting *Caisson Corp. v. Cty. W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974)). The discovery Plaintiff seeks from VEB, particularly concerning the bank's own assets and operations, will not identify the location and source of the *Federation Defendants'* assets that would satisfy the judgment. *Elise Trust*, 2011 U.S. Dist. LEXIS 157867, at *6. Further, to the extent the discovery requests concern any assets that may be attributable to the Federation Defendants, Plaintiff's requests

remain irrelevant to post-judgment proceedings because Plaintiff still could not attach any Russian assets held in the United States or abroad to satisfy this judgment. *See Republic of Arg. v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014) (explaining that "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place" under Federal Rule of Civil Procedure 26).

### 1. VEB's U.S. Assets Cannot Be Used to Satisfy The Interim Judgment

As described above, the Russian government formed VEB as a corporation and contributed its start-up capital but the Russian Federation does not possess even the typical rights and benefits of corporation ownership. Pfaehler Decl. ex. 2, Law 82-FZ at art. 18. Instead, the VEB statute provides that "Government authorities of the Russian Federation, constituent entities of the Russian Federation and local government authorities may not interfere in VEB.RF's activities aimed at achieving its business purposes" unless authorized by law. *Id.* art. 6.1. VEB's enabling laws clearly distinguish between VEB and the "Government of the Russian Federation," and the Russian Federation cannot direct VEB's business and day to day affairs. *Id.* art. 6.1.2.

The Law creating VEB specifically defines the independent status of the Russian Federation and VEB, stating that VEB is the owner of its assets (i.e., autonomy of VEB property is established) and VEB is not liable for any obligations of the Russian Federation. Similarly, the Russian Federation is not liable for VEB's obligations.

In addition, the Federal Law if the Russian Federation dated 1 December 1996, No. 7-FZ, on Non-Profit Organizations ("the NPO Law"), which is applicable to VEB, also reinforces the autonomy of VEB. Like the VEB Law, the NPO Law indicates that VEB is not answerable for obligations of the Russian Federation, or vice versa. Pfaehler Decl. ex. 7, Law 7-FZ, art. 7.1.1. The NPO Law sets forth that state corporations own their own property, which can be transferred

to the treasury of the Russian Federation only by the decision of the supreme management body (either board of directors or supervisory council) of the NPO. *Id.* art. 3.1, art. 7.3.1. VEB has a supervisory council with this decision-making authority. Pfaehler Decl. ex. 2, Law 82-FZ at art. 12.1.21.

Article 126 of the Russian Federation Civil Code establishes the principle of separate responsibility of public legal entities and legal entities created by them. Pfaehler Decl. ex. 8, Civil Code of the Russian Federation, art. 126. The State is not responsible for the debts of these legal entities, and these legal entities are not liable for the debts of the State. *Id.* art. 126.2-.3.

Similarly, Article 56 of the Russian Federation Civil Code provides that the founder (participant) of a legal entity or the owner of its property is not responsible for the obligations of a legal person, and the legal person is not responsible for the obligations of the founder (participant) or owner, except as provided for by the Civil Code or constituent documents of a legal entity. Pfaehler Decl. ex. 8, Civil Code of the Russian Federation, art. 56.

Plaintiff's discovery requests on VEB thus are irrelevant because the requested information could never lead to executable assets of the judgment debtor. VEB's assets cannot satisfy the Interim Judgment. VEB is a separate juridical entity.

## 2. VEB Is Strongly Presumed to be Independent of the Federation Defendants

[D]uly created instrumentalities of a foreign state are to be accorded a presumption of independent status." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("*Bancec*"). This is a strong presumption. *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 201 (2d Cir. 2016). An "entity's status as an agency or instrumentality of a foreign sovereign is insufficient, without more, to establish that the entity is liable for the debts of the foreign state." *Bayer & Willis Inc. v. Republic of the Gambia*, 283 F.

Supp. 2d 1, 4 (D.D.C. 2003); *see also, e.g., Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069-73 (9th Cir. 2002) (plaintiff could not overcome presumption of state-owned Iranian bank's separate juridical status, and thus could not execute on the bank's assets to satisfy judgment against Iran); *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 307 (S.D.N.Y. 1998) (corporation's property could not be attached to collect on a debt owed by Peru where plaintiff failed to overcome the presumption that the corporation was separate juridical entity).

"Both *Bancec* and the FSIA legislative history caution against too easily overcoming the presumption of separateness." *De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984). *Bancec* "sets a high bar for when an instrumentality will be deemed an alter ego of its sovereign state." *EM Ltd. v. Banco Cent. de la Republica Argentin*a, 800 F.3d 78, 99 (2d Cir. 2015).

In "examin[ing] ... the nature of government instrumentalities," the *Bancec* Court noted these entities "vary considerably, but many possess a number of common features." 462 U.S. at 623-24.

> A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 398 (D. Del. 2018), *appeal filed*, Aug. 15, 2018, 3d Cir. Case No. 18-2797 (quoting *Bancec* at 624). A typical government instrumentality would, normally, retain its separate juridical status. *Crystallex*, 333

F. Supp. 3d at 398 (quoting *Bancec* at 633).

In *Bancec* the Supreme Court explained that "the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign in order to facilitate credit transactions with third parties." 462 U.S. at 626. "Freely ignoring the separate status of government instrumentalities would result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign, and might thereby cause third parties to hesitate before extending credit to a government instrumentality without the government's guarantee." *Id.* "Due respect for the actions taken by foreign sovereigns and for principles of comity between nations leads us to conclude ... that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Id.* at 626-27; *see also Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 822-23 (2018)(quoting *Bancec*).

"Thus, as a default, those agencies and instrumentalities of a foreign state were to be considered separate legal entities that cannot be held liable for acts of the foreign state." *Rubin,* 138 S. Ct. at 822 (quoting *Bancec*, 462 U.S. at 628)).

> Nevertheless, the Court recognized that such a stringent rule should not be without exceptions. The Court suggested that liability would be warranted, for example, "where a corporate entity is so extensively controlled by [the state] that a relationship of principal and agent is created," [*Bancec*] at 629, 103 S.Ct. 2591, or where recognizing the state and its agency or instrumentality as distinct entities "would work fraud or injustice," *ibid.* (internal quotation marks omitted).

*Rubin*, 138 S. Ct. at 822. "But the Court declined to develop a 'mechanical formula for determining' when these exceptions should apply, *id.*, at 633, 103 S.Ct. 2591, leaving lower courts with the task of assessing the availability of exceptions on a case-by-case basis." *Id.* at 822-23. In determining whether a corporate entity is "so extensively controlled" by a sovereign state, the Court considers "whether the sovereign state exercises significant and repeated control

over the instrumentality's day-to-day operations." *EM Ltd.*, 800 F.3d at 91. The judiciary looks "to the ownership and management structure of the instrumentality, paying particularly close attention to whether the government is involved in day-to-day operations, as well as the extent to which the agent holds itself out to be acting on behalf of the government." *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines*, 965 F.2d 1375, 1382 (5th Cir. 1992); *Doe v. Holy See*, 557 F.3d 1066, 1079-80 (9th Cir. 2009) (requiring "day-to-day, routine involvement" to overcome *Bancec* presumption); *Crystallex*, 333 F. Supp. 3d at 401.

Considerations relevant whether a sovereign state exercises control over an instrumentality's day-to-day operations include:

> whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state. These factors are relevant to answering the touchstone inquiry for "extensive control": namely, whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations.

*EM Ltd.*, 800 F.3d at 91.

> Over time, the Courts of Appeals coalesced around the following five factors (commonly referred to as the *Bancec* factors) to aid in this analysis:
>
> > (1) the level of economic control by the government;
> >
> > (2) whether the entity's profits go to the government;
> >
> > (3) the degree to which government officials manage the entity or otherwise have a hand in its daily affairs;
> >
> > (4) whether the government is the real beneficiary of the entity's conduct; and

> (5) whether adherence to separate identities would entitle the foreign
> state to benefits in United States courts while avoiding its obligations.

*Rubin,* 138 S. Ct. at 823, quoting *Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,*

965 F.2d 1375, 1380, n. 7 (5th Cir. 1992), and citing *Flatow v. Islamic Republic of Iran*, 308 F.3d

1065, 1071, n. 9 (9th Cir. 2002).[27]

Applying the *Bancec* factors shows that VEB's assets cannot be reached to satisfy the

Interim Judgment:

> (1) the Russian Federation has no level of economic control over the
> property of VEB;
>
> (2) the profits of VEB are required to be reinvested in VEB, not paid to
> the government of the Russian federation;
>
> (3) the officials of the Russian Federation do not manage the business
> operations of VEB or otherwise control or play any role in its daily
> affairs:
>
> (4) VEB is the sole beneficiary in interest of its assets and profits; the
> Russian Federation has no claim on them; and
>
> (5) VEB has no relationship to the Chabad case, as we have noted above,
> and has no other relationships in the US or in courts in the US that would
> in any way be affected by a ruling in this matter that it is not liable for
> Russian government obligations.

Thus these factors show that with respect to the touchstone inquiry for "extensive

control," namely whether the Russian state exercises significant and repeated control over VEB's

day-to-day operations, the answer is plainly no.

---

[27] In 2008 Congress amended the FSIA and added § 1610(g), which effectively codifies the *Bancec* factors by providing that if a judgment is entered against a foreign state under section 1605A (state sponsor of terrorism), then the property of an agency or instrumentality is subject to attachment in aid of execution regardless of whether or not the instrumentality meets the five *Bancec* factors. By implication, then, the five *Bancec* factors have been codified for judgments entered under the other sections of FSIA. *See* NDAA § 1083(b)(3)(D), 122 Stat. 341-42; 28 U.S.C. § 1610(g)(1).

### 3. Rule 69 Does Not Allow Plaintiff to Engage in a Fishing Expedition Under the Guise of Post-Judgment Discovery

Ordinarily, "judgment creditors cannot typically compel disclosure of assets of non-parties" under Rule 69 of the Federal Rules of Civil Procedure. *Falicia v. Advanced Tenant Servs.*, 235 F.R.D. 5, 7 (D.D.C. 2006). In order to pursue post-judgment discovery concerning the financial affairs of a non-party, "there must be facts before the Court to show" the alleged relationship the non-party has with the judgment debtor. *See Trs. of N. Fla. Operating Eng'rs Health & Welfare Fund v. Lane Crane Serv., Inc.*, 148 F.R.D. 662, 664 (M.D. Fla. 1993) (considering non-party's objections to the plaintiff's subpoena predicated on an "alleged alter ego relationship with the judgment debtor"); *see also Falicia*, 235 F.R.D. at 7-8 (finding that "discovery is permissible when the parties are closely related and 'reasonable doubts' have been raised concerning 'the good faith of the transfer' of assets between" the judgment debtor and the non-party).

Rule 69 does not allow Plaintiff "to engage in a fishing expedition under the guise of post-judgment discovery to determine if a basis exists to pierce the corporate veil, even though no facts currently suggest that piercing is appropriate." *See Michael W. Dickinson, Inc. v. Martin Collins Surfaces & Footings, LLC*, No. 11-cv-281-JMH, 2012 U.S. Dist. LEXIS 166751, at *4-5, 9-11 (E.D. Ky. Nov. 20, 2012) (rejecting plaintiff's efforts to discover information from an alleged subsidiary, "without any factual support" regarding the existence of an alter ego relationship or "suggesting that veil piercing is appropriate"). Through this Subpoena, however, Plaintiff has set out on exactly that type of "fishing expedition." Several of the Document Requests and Deposition Topics identified in the Subpoena amount to nothing more than a vain attempt to contrive some basis by which to disregard VEB's separate legal personality. Thus "documents to be produced" number 4 requests "Documents Sufficient To show any Russian

Federation ownership interest in Vnesheconombank, including, but not limited to, the percentage ownership, whether ownership is direct or indirect, and the period of ownership by the Russian Federation." Similarly, request 5 seeks "Documents Sufficient To identify Vnesheconombank's corporate structure with respect to its Russian parent, subsidiaries and/or sister corporations, including, but not limited to, the identification of any corporate parent, subsidiary, predecessor, or successor company and the corporate structure of any such related companies, and the personnel responsible for management of Vnesheconombank and such related companies."

This Court should "not allow [Plaintiff] to go on a 'fishing expedition' with the mere 'hope' that it will obtain relevant information" that would allow Plaintiff to conflate VEB with the Russian Federation. *See United States v. Kellogg Brown & Root Servs.*, 284 F.R.D. 22, 37 (D.D.C. 2012). Plaintiff offers no evidence to suggest they can meet the predicates for veil piercing under the applicable Russian law.

4. **Plaintiff's Discovery Requests Are Also Irrelevant Because Plaintiff Cannot Attach Any Other Assets For Which It Seeks Discovery In Order To Enforce The Interim Judgment**

To the extent any of Plaintiff's requested discovery seeks information concerning U.S. assets actually attributable to the Federation Defendants, Plaintiff's Subpoena is premature in that it has not first obtained an order pursuant to 28 U.S.C. § 1610(c). In addition, discovery regarding any such Russian assets remains irrelevant because none of the exceptions to execution immunity set forth in § 1610 of the FSIA authorizes execution against Russian assets for purposes of satisfying the Interim Judgment. *See NML Capital, Ltd.*, 573 U.S. at 144.

As a threshold matter, Plaintiff should not be permitted to solicit discovery absent a § 1610(c) order. *See Owens v. Republic of Sudan*, 141 F. Supp. 3d 1, 11 (D.D.C. 2015) (finding that a § 1610(c) order only "entitle[s plaintiffs] to begin enforcing their presumptively valid judgments" and does not "authorize the attachment or execution upon any particular property");

*Bayer & Willis Inc.*, 283 F. Supp. 2d at 3, 8 (D.D.C. 2003) (dismissing writs of attachment and interrogatories against third-party garnishees that were improperly served because the court had not yet issued a § 1610(c) order); *see also* Telephone Conference Tr. 4:5-7, *Micula v. Gov't of Romania*, No. 15-mc-0107 (S.D.N.Y. Sept. 3, 2015), ECF No. 83 (determining whether a "reasonable amount of time" had passed in order to issue a § 1610(c) order to allow petitioners to begin discovery of Romanian assets); *Avelar v. J. Cotoia Const., Inc.*, No. 11-cv-2172, 2011 U.S. Dist. LEXIS 126487, at *21 n.8 (E.D.N.Y. Nov. 2, 2011) ("the FSIA requires that *any steps* taken by a judgment creditor to enforce the judgment must be pursuant to a court order authorizing the enforcement") (emphasis added).

In addition, to obtain the requisite pre-execution court order under § 1610(c), Plaintiff must identify the specific property to be executed against and demonstrate that it falls within one of the FSIA's exceptions to immunity from execution. *See Walters v. Indus. & Commercial Bank of China, Ltd*., 651 F.3d 280, 297 (2d Cir. 2011) (affirming order quashing subpoenas *duces tecum* issued to non-parties). Thus, attachment of the Federation Defendants' assets or other property -- or the attachment of assets that Plaintiff would like to deem to be theirs -- would be improper without a prior judicial determination that Plaintiff has met its burden of demonstrating that such assets are not immune from attachment and execution. *See id*. (the "explicit cross-reference to § 1610(a) and (b) [in] § 1610(c) clearly signals that execution depends on a judicial determination that the property at issue falls within one of the exceptions to immunity set forth in those subsections").

More importantly, and as the United States has discussed at length in its multiple Statements of Interest previously submitted in this case, the FSIA does not permit attachment of Russian assets in the United States to satisfy the Interim Judgment, thus rendering discovery

concerning any such assets irrelevant and impermissible.  *See* Pfaehler Decl. exs. 3-6.  Only

pursuant to the FSIA may a judgment creditor obtain and enforce judgments against a foreign

sovereign in U.S. courts.  The "property in the United States of a foreign state shall be immune

from attachment arrest and execution" except as provided in sections1610 and 1611.  28 U.S.C. §

1609.  The FSIA is "the sole basis" for obtaining jurisdiction over foreign sovereigns in U.S.

court.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-435 (1989).  In

addition, the FSIA "explicitly contemplates that a court may . . . be unable to enforce its

judgment [against a foreign sovereign] unless the foreign state holds certain kinds of property

subject to execution."  *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d

373, 377 (D.C. Cir. 2011).  The district court had the ability to order contempt sanctions against

the Federation Defendants, but "[w]hether and how that sanction can be executed" remains "a

separate question." *In re Grand Jury Subpoena*, 749 F. App'x 1, 2, 4 (D.C. Cir. 2018).  The D.C.

court here acknowledged the distinction when it granted Plaintiff's motion for contempt

sanctions.  *See Agudas Chasidei Chabad of United States v. Russian Fed'n*, 915 F. Supp. 2d 148,

152 (D.D.C. 2013) (differentiating between the "court's authority to issue sanctions" and its

power to "*enforce* them," and acknowledging that "the latter is carefully restricted by the FSIA")

(emphasis original).

The only exceptions to immunity from attachment and execution are enumerated in 28

U.S.C. § 1610, and none applies here.

> A review of the relevant sections, § 1610 and § 1611, shows that they do
> not present a situation in which the order could stand.  Those sections
> describe the available methods of attachment and execution against
> property of foreign states.  ***Monetary sanctions are not included***.

*Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 428 (5th Cir. 2006), *cert. dismissed*, 549 U.S.

1275 (2007)(emphasis added).

The Federation Defendants have not made a specific waiver of immunity. *See* 28 U.S.C. § 1610(a)(1). The Interim Judgment does not arise out of a claim based on commercial activity. *See id.* § 1610(a)(2). The Interim Judgment is not "based on an order confirming an arbitral award rendered against the foreign state" (§ 1610(a)(6)), nor does it implicate "any contractual obligation or any proceeds from such a contractual obligation to indemnify or hold harmless the foreign state or its employees under a policy of automobile or other liability or casualty insurance." *Id.* § 1610(a)(5). Plaintiff's underlying claim was not based on the FSIA's terrorism exception to jurisdictional immunity, or on state sponsorship of terrorism. *Id.* §§ 1605A, 1610(a)(7). The interim Judgment does not relate to a judgment establishing the types of "rights in property" identified in §§ 1610(a)(3) and 1610(a)(4).

Instead, the Interim Judgment resulted from a contempt finding imposing sanctions on the Federation Defendants.[28] Because none of the § 1610 exceptions to execution immunity allows Plaintiff to attach Russian assets in satisfaction of the Interim Judgment, discovery into any such assets cannot possibly be relevant, and should not be permitted by this Court.

**B.      Plaintiff's Discovery Requests Are Overly Broad, Oppressive, And Unduly Burdensome**

Not only is the information sought irrelevant to satisfaction of the judgment, Plaintiff's discovery requests also impose an undue burden on VEB, in violation of Fed. R. Civ. P. 45(d)(3)(A)(iv). "In assessing whether the subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are

---

[28] See *Agudas Chasidei Chabad v. Russian Fed'n*, 128 F. Supp. 3d 242, 245, 249 (D.D.C. 2015); *see also* Statement of Interest of the United States at 10, *Chabad v. Russian Fed'n*, ECF No. 151.

described and the burden imposed." *Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017). The irrelevance of Plaintiff's discovery requests has already been discussed above. These requests, however, also impose an undue burden on VEB, given their breadth, lack of particularity with which the documents are described, and the burden imposed on VEB as a non-party to this action.

Several of Plaintiff's discovery requests seek information regarding the organization of VEB and its relation to the Russian Federation that is publicly available, which Plaintiff could obtain without the need for discovery on VEB. Document Request 4 and Deposition Topic 4 demand information regarding "Russian Federation ownership interest in Vnesheconombank," while Document Request 5 and Deposition Topic 5 demand information regarding VEB's corporate structure and management. Pfaehler Decl. ex. 1. Plaintiff could have easily answered these questions itself by referring to VEB's enabling laws. These and other relevant regulations regarding VEB's structure and governance are readily available on VEB's website, at https://veb.ru/en/. There is no need to force VEB to produce documents or prepare a corporate witness to testify at a deposition on these topics. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (quashing subpoena to produce documents that were publicly available).

In addition, Plaintiff's request that VEB produce information about any "related companies" is far too broad. *See* Pfaehler Decl. ex. 1, Document Request 5 (calling for production of "documents sufficient to identify Vnesheconombank's corporate structure with respect to its Russian parent, subsidiaries and/or sister corporations, including, but not limited to, the identification of any corporate parent, subsidiary, predecessor, or successor company and the corporate structure of any such related companies."). As explained above, VEB coordinates with

numerous other development institutions in Russia; VEB cannot be expected to collect and produce for Plaintiff information regarding all their structures let alone information regarding "the personnel responsible for management of . . . such related companies." *Id.*, Document Request 5.

Several of Plaintiff's requests are also overbroad on their face because they are vague and lack particularity. *See* Pfaehler Decl. ex. 1, Document Request 6 (requesting "documents sufficient to show *any services* Vnesheconombank has provided to or for the Russian Federation") (emphasis added); *id.*, Deposition Topic No. 6 (same). Plaintiff cannot expect VEB to respond to such generalized requests. *Buie v. District of Columbia*, 327 F.R.D. 1, 10 (D.D.C. 2018) (rejecting document requests for records concerning all disciplinary actions and the supervision of the underlying tortfeasors as "overly broad").

## C. Enforcing the Subpoena Could Impact Substantial Foreign Policy Interests

Plaintiff's attempt to enforce the Interim Judgment by first seeking discovery on the U.S. subsidiary of foreign company, with an eye towards enforcing the Interim Judgment against Russian assets, could substantially impact U.S. foreign relations. Inevitably, "[a]ctions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983). As the United States explained in its February 2016 Statement of Interest, "restraint of the assets of a foreign state, its agencies or instrumentalities, or its officials, in and of itself, can reasonably be expected to cause disruption to the activities of the entities whose assets are at issue and result in immediate and significant interference in U.S. relations with that foreign state." Pfaehler Decl. ex. 5, Statement of Interest of the United States at 15, ECF No. 151. Furthermore, "a fishing expedition into a foreign state's assets as well as those of its . . . affiliated entities" likely could "damage the United States' foreign policy interests, and such concerns are further heightened

where the underlying judgment (here, for monetary contempt sanctions) is unenforceable."[29]

Indeed, allowing "sweeping discovery into Russian property" could pave the way for potential

"reciprocal orders being entered against the United States," as well as U.S. companies, in foreign

courts.[30]

## II.    IF THE COURT DOES NOT QUASH THE SUBPOENA, THIS COURT SHOULD STAY COMPLIANCE WITH THE SUBPOENA PENDING RESOLUTION OF THE OBJECTIONS OF THE UNITED STATES

In the alternative, VEB respectfully requests the Court to stay compliance with Plaintiff's

discovery requests pending resolution of the issues identified in the United States' Statements of

Interest, with leave for VEB to refile the motion to quash at that time.  Compliance with the

Subpoena should not be required when the D.C. court has not resolved the issues raised by the

United States in its Statements of Interests, particularly in light of the foreign policy and other

concerns expressed in those statements.[31]  The "decision on whether to stay discovery is within

the sound discretion of the district court." *PCH Mut. Ins. Co. v. Cas. & Sur., Inc.*, 569 F. Supp.

2d 67, 78 (D.D.C. 2008).  Requiring VEB to respond to Plaintiff's Subpoena, before the D.C.

court has definitively ruled on the issues identified in the Statements of Interest, would be

premature and could potentially be harmful to the interests of the United States.  The issues

raised by the United States would be dispositive of Plaintiff's efforts to enforce the Subpoena.

So, for instance, compliance by JPMorgan Chase and Citibank with Plaintiff's subpoenas

in the related proceedings in this Court was stayed "[p]ending the entry of an order by the D.C.

---

[29] *See* Pfaehler Decl. ex. 6, Supplemental Statement of Interest of the United States at 7-8, ECF No. 155.

[30] *See* Pfaehler Decl. ex. 5, Statement of Interest of the United States at 19-20, ECF No. 151.

[31] *See* generally Statement of Interest of the United States, ECF No. 151; Supplemental Statement of Interest of the United States, ECF No. 155.

Court" that resolved these "issues raised in the Statement of Interest."[32]  The Court subsequently denied Plaintiff's request to lift the stay, as the D.D.C.'s "disposition of the statement of interest," and the issues raised therein, remained pending.[33]  It  remains the case that in "the event that the D.C. court agrees with the government, plaintiff will likely be precluded from moving forward with the discovery it seeks via the subpoenas at issue here." *Id*. at 10:6-9.  Even if discovery on VEB conceivably would give Plaintiff information regarding assets attributable to Russia (which as explained above, it cannot), the D.C. Court's agreement with the United States' position likely would preclude Plaintiff from pursing the discovery requested served on VEB.

Plaintiff's recent motion for an Order to Show Cause, which would require that the United States further substantiate its opinion and interests in this case, also underscores the importance of a conclusive resolution of these issues, before any post-judgment discovery takes place.[34]  Thus, in the alternative VEB requests that the Court grant a stay of the Subpoena immediately, before any compliance is required, and until the Court has decided these issues put forth by the United States and in Plaintiff's related briefing, with leave for VEB to renew its motion to quash then.

---

[32]  *See* Stipulation and Order Regarding Resp. to Non-Party Subpoenas at 3, Agudas Chasidei Chabad of U.S. v. Russian Fed'n, et al., No. 16-mc-00040-Pl (S.D.N.Y. Mar. 24, 2016), ECF No. 22

[33]  *See* Conference Tr. at 9:11-18, No. 16-mc-00040-Pl, (S.D.N.Y. May 18, 2018), ECF No. 39.

[34]  *See* Plaintiff's Motion for Order to Show Cause, *Chabad v. Russian Federation*, ECF No. 175.

## <u>CONCLUSION</u>

For the foregoing reasons, non-party State Development Bank VEB.RF respectfully

requests the Court to grant its Motion to Quash the Subpoena or, in the alternative, to stay any

compliance with the Subpoena pending resolution of the issues identified in the United States'

Statements of Interest, with leave to refile this motion to quash at that time.

Dated: May 24, 2019                DENTONS US LLP


By:  /s/ Kenneth J. Pfaehler
       Kenneth J. Pfaehler
       Arthur R. Bregman (*pro hac vice*
       application forthcoming)
       Nicholas Petts (*pro hac vice* application
       forthcoming)
       1900 K Street, N.W.
       Washington, D.C. 20006
       Telephone: (202) 408-6468

       *Attorneys for Non-Party State*
       *Development Bank VEB.RF (f/k/a*
       *Vnesheconombank)*