**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AGUDAS CHASIDEI CHABAD OF UNITED STATES, ) ) ) ) *Plaintiff*, ) ) v. ) ) ) RUSSIAN FEDERATION; RUSSIAN ) MINISTRY OF CULTURE AND MASS ) COMMUNICATION; RUSSIAN STATE ) LIBRARY; and RUSSIAN STATE ) MILITARY ARCHIVE, ) ) *Defendants.* ) | Case No. 1:19-mc-00146-RCL  Main Action: Case No. 1:05-cv-01548-RCL |

**PLAINTIFF AGUDAS CHASIDEI CHABAD OF UNITED STATES' SUBMISSION IN RESPONSE TO STATE DEVELOPMENT BANK VEB.RF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH (ECF 28)**

**INTRODUCTION**

Plaintiff Agudas Chasidei Chabad of United States ("Chabad") respectfully submits this response to the Supplemental Memorandum (ECF 28) ("Suppl. Mem.") filed by State Development Bank VEB.RF ("VEB") in further support of its pending motion to quash subpoenas that Chabad served on VEB to identify assets that may be attached for purposes of enforcing this Court's judgments. As set forth below, discovery should proceed on two grounds: (1) Chabad is entitled to discovery into whether VEB holds assets of the Russian Federation itself, and (2) Chabad is entitled to take discovery into whether VEB is operating as the Russian Government's agent or alter ego.

One preliminary point is worth noting. VEB's original motion to quash was supported by the declaration of its outside counsel. (ECF 5). VEB did not file a declaration from any company personnel with its reply, and it did not take the opportunity to file a declaration. In short, the Court still has not heard any sworn testimony from a person with personal knowledge as to VEB or its activities.

**ARGUMENT**

**I. THE RECORD SUPPORTS DISCOVERY INTO VEB'S POSSESSION OF RUSSIAN FEDERATION ASSETS**

VEB says that it was established by the Russian Federation for purposes of financing Russian companies' development projects around the world. Mot. Quash (ECF 4) at 5. VEB further states that, under Russian law, "[t]he only circumstance in which VEB assets could become property of the Russian Federation is if VEB's supervisory board adopted a formal decision to transfer part of its assets to the Treasury of the Russian Federation." *Id.* at 7. VEB's supervisory board, however, is chaired by the President of the Russian Federation, and other members "shall be appointed by the Government of the Russian Federation for a period of five

1

years." Pfaehler Decl. in Supp. Mot. Quash (ECF 5-2) at Ex. 2, Art. 10.2 and Art. 10.4. In other words, VEB's assets may not now be in the *possession* of the Russian Federation, but they are under the Russian Government's *control.*

Furthermore, as Chabad pointed out in its Opposition to VEB's Motion to Quash (ECF 11), the U.S. Treasury's sanctions directed to Russia includes VEB on the list of sanctioned entities. Treasury describes VEB as "a development bank and payment agent for the Russian government." Chabad Opp'n (ECF 11) at 9.

In its Reply, VEB emphasized that Russian law limits the Russian Government's control over VEB's day-to-day activities. Reply Mem. Supp. Mot. Quash (ECF 21) at 3 (heading). Even assuming that's true, it does not belie the fact that, by Russian law and according to the U.S. Treasury, VEB's assets are under Russian Government control.

VEB's supplemental submission does not address this important point. At the very least, Chabad should be allowed to probe this issue further through discovery.

## II.  CHABAD SHOULD BE ALLOWED TO TAKE DISCOVERY INTO VEB'S ASSETS

Even if VEB does not hold Russian Federation assets *per se*, its assets are still subject to attachment if VEB is acting as the Russian Federation's agent or alter ego. VEB does not contest the point. For reasons noted above and in Chabad's opposition to VEB's motion to quash, there is ample basis for discovery into this issue.

In its Supplemental Memorandum, VEB offers three new points that, in VEB's view, foreclose discovery altogether: (i) that the Court may not attach VEB assets to enforce the Court's 2010 judgment ordering return of the Schneerson Collection because VEB does not have the Collection, (ii) the Foreign Sovereign Immunities Act ("FSIA") does not permit execution with respect to VEB's commercial assets, and (iii) the Court did not have the authority to enforce its orders in the first place.

VEB does not argue, much less show, that it has standing to challenge the validity of the Court's orders directed to the Russian Federation. None of the cases VEB cites support the idea that a third party served with a subpoena in support of a judgment may mount a collateral attack on the underlying judgment.

With that point in mind, we address VEB's contentions in turn.

### A. The Fact That VEB is not in Possession of the Schneerson Collection is Irrelevant

This Court has entered two judgments: the original 2010 judgment ordering the return of the Schneerson Collection, and the ongoing monetary judgment awarding to Chabad the accrued sanctions for Russia's ongoing contempt in refusing to comply with the 2010 judgment. VEB argues that the 2010 judgment is irrelevant because it directs the return of the Schneerson collection, and VEB doesn't have it. Suppl. Mem. at 2-3.

The Federal Rules of Civil Procedure address the point head-on. Rule 69(a)(2) provides for discovery in aid of a judgment "from any person" – not just the judgment debtor. Moreover, Rule 70 then specifies that, with respect to a judgment directing specific performance – like the return of a priceless and treasured religious library and archive – the Court may hold the non-compliant party in contempt and may use its powers to fashion relief designed to put maximum pressure on the judgment debtor.

> "[A] district court might be moved by the equities to order such onerous relief under Rule 70 that a party may be pressured to perform acts that are beyond the power of the court to order directly. Thus, there is a great deal of leverage under the Rule."

13 James Wm. Moore et al., *Moore's Federal Practice - Civil* § 70.02 (3d ed. 2019). This Court has held Russia in contempt, and has entered a money judgment for the amount of accrued sanctions. Under Rule 69, Chabad is entitled to discovery from any party with respect to that judgment as well.

3

In *Republic of Argentina v. NMLCapital, Ltd.*, 573 U.S. 134 (2014), the Supreme Court observed that "[t]he rules governing discovery in postjudgment execution proceeding are quite permissive." *Id.* at 138 (citing Rule 69). The only limitation on third-party discovery of assets is if the third party showed that the subpoenas sought "information that could not possibly lead to executable assets" because they are immune from discovery under the FSIA. *Id.* at 144. As explained below, VEB has made no such demonstration. Under the permissive post-judgment discovery rules, including Rules 69 and 70, VEB's observation that it does not have the Schneerson Collection does not mean that its assets are outside the scope of the Court's and Chabad's efforts to enforce the Court's judgments.

      **B.**    **VEB's Commercial Assets are Subject to Execution Under 28 U.S.C. § 1610(a)(3)**

VEB says that its assets are immune from attachment under the FSIA, and accuses Chabad of offering counter-arguments "from the text of the statute"! Suppl. Mem. at 4. Most of VEB's Supplemental Memorandum, in fact, is devoted to explaining why the statute does not mean what it plainly says.

As an initial matter, VEB points to the preamble of § 1610(a), and argues that the FSIA waives a foreign sovereign's immunity from attachment only if the property is used "for commercial activity in the United States." That is correct – and there can be no doubt that VEB is engaged in commercial activity. The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The Supreme Court has further explained a foreign sovereign's activities are "commercial" when they "are the *type* of actions by which a private party engages in trade and traffic or commerce," without regard to the sovereign's motive. *Republic of Argentina v.*

*Westover*, 504 U.S. 607, 614 (1992) (emphasis in original, citations and internal quotation marks omitted).

VEB is a bank. It "participates in managing development institutions," "invests in and provides financing to Russian companies and projects in a number of different industries," and "provides financial support and issues guarantees to development institutions to ensure they can fulfill their obligations." Mot. Quash (ECF 4) at 5-6. There can be no dispute that these are commercial activities under § 1603(d) and *Westover*.

VEB makes a separate argument when it says in its Supplemental Memorandum that the property subject to attachment must be the same property that had been seized in violation of international law. Suppl. Mem. at 6. To support that interpretation, VEB relies on a number of sources, <u>*but ignores the language of the statute*</u>, which says:

> (a)  The **property** in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if— …
>
> > (3) the execution relates to a judgment establishing rights in **property** which has been taken in violation of international law or which has been exchanged for property taken in violation of international law,

28 U.S.C. § 1610(a) (emphasis added). VEB's argument is that the word "property" in the preamble to § 1610(a) must be the same property covered by the judgment addressed in § 1610(a)(3). That is not what the statute says – the property in the United States and the property covered by the judgment are not necessarily the same. If Congress had intended that reading, it would have said in (a)(3) "the execution relates to a judgment establishing rights in **the** property, **which has been taken** in violation of international law." That is not what the statute says.

5

VEB acknowledges that, under § 1610(a)(3), the sovereign property is not immune if "the execution relates to a judgment establishing rights in property" – which, as VEB notes, means that "the execution must be on such a judgment." Suppl. Mem. at 6. But VEB goes astray when it then says, "It is an execution on the property at issue -- here, the Collection." *Id.* at 7. By switching the target of the execution from "judgment" to the "property," VEB distorts the meaning of the statute.

Chabad is entitled to discovery, and ultimately execution that relates to *judgment* that property was taken in violation of international law. The statute says no more and no less.

**C.     This Court Had Authority to Order Return of the Schneerson Collection**

In its final argument, VEB contends that the Court lacked the power to issues its judgment ordering the return of the Schneersohn Collection from Russia, and the contempt citation that followed the original judgment is null and void. Suppl. Mem. at 7-8.

As an initial matter, VEB's argument appears to conflate two issues. The first is whether the Court had jurisdiction over Russia and the other defendants to direct Russia to transfer the collection. *Id*. at 8 ("But the Court lacks extraterritorial jurisdiction to issue an injunction compelling transfer of property inside Russia.") Even if VEB has standing to raise this argument, the jurisdiction issue has been addressed. The Russian Federation itself initially appeared to contest jurisdiction and it lost. Indeed, the Court of Appeals engaged in an exhaustive review of the relevant FSIA provision – 28 U.S.C. § 1605(a)(3) – and Chabad's claims. The Court concluded that Chabad had stated a claim as to the entire Schneerson collection,, and that this Court has jurisdiction over that claim in all respects. *Agudas Chasidei Chabad of the U.S. v. Russian Fed'n*, 528 F.3d 934, 939 (D.C. Cir. 2008) ("[W]e hold that [Chabad] satisfied the FSIA's jurisdictional requirements as to both the Library and the Archive.").

6

VEB also cites case law regarding execution in support of a judgment against property located in other countries. Suppl. Mem. at 8-9 ("Our courts generally lack authority in the first place to execute against property in other countries." (quoting *NML,* 573 U.S. at 144)). But Chabad has not asked the Court to execute against property in other countries. Chabad has stated, and now confirms, that it is seeking attachable or executable property in the United States. Nothing in the statute or the case law VEB cites suggests that this Court overstepped when it ordered the return of Chabad's property.[1]

VEB has operations in the United States, it was served with a subpoena in the United States, and it has no basis for asserting that Chabad is seeking to expand this Court's extraterritorial reach.

## **CONCLUSION**

For these reasons, as well as those discussed in Chabad's prior submissions and at the hearing on this matter, VEB's motion to quash should be denied.

---

[1] VEB cites Judge Contreras' decision in *Hardy Exploration & Production (India), Inc. v. Government of India, Ministry of Petroleum & Natural Gas*, 314 F. Supp. 3d 95 (D.D.C. 2018). That complicated opinion concerned a request that the district court enforce an overseas arbitration award, and the court "balance[d] two important U.S. public policy values: respect for the sovereignty of other nations and respect for foreign arbitral agreements." *Id.* at 109. The only relevance to this case is Judge Contreras' reference to the Government's Statement of Interest with respect to this Court's order directing that Russia return Chabad's property. Judge Contreras did not purport to apply the same FSIA provisions at issue in this case, or to question the order against Russia and the other defendants. He did note that the concerns expressed by the Government would bear on whether a U.S. court should issue an order regarding an arbitration award "that would deprive a foreign nation of the ability to decide who will be able to extract and utilize its natural resources." *Id.* at 112.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  December 18, 2019 | By:  */s/ Robert P. Parker* |
|  | Steven Lieberman (D.C. Bar No. 439783) |
|  | Robert Parker (D.C. Bar No. 404066) |
|  | Daniel McCallum (D.C. Bar No. 1006938) |
|  | ROTHWELL, FIGG, ERNST & MANBECK, P.C. |
|  | 607 14th St., N.W., Suite 800 |
|  | Washington, DC 20005 |
|  | Phone:  202-783-6040 |
|  | Facsimile:  202-783-6031 |
|  | Emails:  slieberman@rfem.com |
|  |          rparker@rfem.com |
|  |          dmccallum@rfem.com |
|  |  |
|  | *Counsel for Agudas Chasidei Chabad of United States* |

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th Day of December, 2019, a true and correct copy of the foregoing **PLAINTIFF AGUDAS CHASIDEI CHABAD OF UNITED STATES' SUBMISSION IN RESPONSE TO STATE DEVELOPMENT BANK VEB.RF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH (ECF 28)** was served by electronic mail on the following counsel of record:

Kenneth J. Pfaehler
Arthur R. Bregman
Nicholas Petts
DENTONS US LLP
1900 K Street, N.W.
Washington, DC 20006
Emails: kenneth.pfaehler@dentons.com
randy.bregman@dentons.com
nick.petts@dentons.com

*Counsel for State Development Bank VEB.RF*


Nathan Michael Swinton
U.S. Department of Justice
Civil Division
20 Massachusetts Avenue, N.W.
Room 7218
Washington, DC 20530
Email: nathan.m.swinton@usdoj.gov

Benjamin Thomas Takemoto
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, DC 20044
Email: benjamin.takemoto@usdoj.gov

*Counsel for the United States of America*

I further certify that on this 18th day of December, 2019, a true and correct copy of the foregoing **PLAINTIFF AGUDAS CHASIDEI CHABAD OF UNITED STATES' SUBMISSION IN RESPONSE TO STATE DEVELOPMENT BANK VEB.RF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH (ECF 28)** was served by First-Class International Mail, through the U.S. Postal Service, on the following parties:

Ministry of Justice of the Russian Federation
Attn: Hon. Alexander Konovalov, Minister
14 Zhitnaya Street
GSP-1 Moscow, Russia 119991

Ministry of Culture of the Russian Federation
Attn: Hon. Vladimir Medinsky, Minister
7/6 Bldg. 1/2, Malyy Gnezdnikovsky Pereulok
Moscow, Russia 125993

Russian State Military Archive
Attn: Vladimir N. Kyzelenkov, General Director
29 Admiral Makarov Street
Moscow, Russia 12512

Russian State Library
Attn: Vadim Valerievich Duda, General Director
3/5, Vozdivhenka Street
Moscow, Russia 119019

/s/ *Erik van Leeuwen*
Erik van Leeuwen
Litigation Operations Coordinator
Rothwell, Figg, Ernst & Manbeck, P.C.