UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUDAS CHASIDEI CHABAD<br>OF UNITED STATES,<br>             Plaintiff,<br><br>v.<br><br>RUSSIAN FEDERATION; RUSSIAN<br>MINSTRY OF CULTURE AND<br>MASS COMMUNICATION;<br>RUSSIAN STATE LIBRARY; and<br>RUSSIAN STATE MILITARY ARCHIVE<br>             Defendants. | No. 19-mc-146-RCL |

## ORDER

Movant Vnesheconombank's ("VEB") arguments have already been considered and addressed by this Court. *See Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 1:05-cv-01548 (RCL), ECF No. 198. A copy of that opinion is attached below. VEB's alternative argument, that the Court should issue a stay of compliance with plaintiff Chabad's subpoena, fails. The government has chosen to file several statements of interest in Chabad's litigation against Russia, but it does not dictate what must be resolved for the litigation to proceed. For the reasons stated herein and set forth in the Tenam memorandum order, VEB's motion to quash is **DENIED**.

It is **SO ORDERED**.

SIGNED this 20th day of December, 2019.

                                                        Royce C. Lamberth
                                                        United States District Judge

Case 1:19-mc-00146-RCL   Document 32   Filed 12/20/19   Page 2 of 10

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AGUDAS CHASIDEI CHABAD<br>OF UNITED STATES,<br>　　　　Plaintiff,<br><br>　　v.<br><br>RUSSIAN FEDERATION; RUSSIAN<br>MINSTRY OF CULTURE AND<br>MASS COMMUNICATION;<br>RUSSIAN STATE LIBRARY; and<br>RUSSIAN STATE MILITARY ARCHIVE<br>　　　　Defendants. | No. 1:05-cv-1548-RCL |

## MEMORANDUM ORDER

After years of litigation, plaintiff Agudas Chasidei Chabad of United States ("Chabad") won a judgment against defendant Russia and several of its state-controlled entities. This Court ordered Russia to return a collection of religious and cultural materials belonging to Chabad, and imposed ever-accruing daily sanctions until it does. Mem. Op., ECF No. 116. In an attempt to collect on those sanctions, Chabad issued subpoenas on Tenex-USA Incorporated ("Tenam"), a Maryland corporation. Opp'n. 1, ECF No. 180. Tenam is wholly but indirectly owned by Rosatom, Russia's state nuclear agency. Newton Decl. ¶¶ 6–7, ECF No.176-2. Chabad, curious as to whether Tenam holds any Russian assets that may help satisfy the sanctions debt, seeks post-judgment discovery into Tenam and the nature of its relationship with Russia. Tenam, meanwhile, resists the discovery, citing the strong protections of corporate personhood and refuting the existence of any undue sovereign control of its operations.

Reaching the assets of a corporate entity to satisfy the debts of its shareholders—known as "piercing the corporate veil"—is "an extraordinary procedure that courts should not use

1

lightly, and only extreme circumstances call for disregard of corporate form." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 19 (D.D.C. 2014). Courts have stopped short of enumerating the circumstances considered "extreme," opting instead for a "case-by-case" approach informed by "equitable principles." *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003); *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 630 (1983) [hereinafter "*Bancec*"]. Most often, however, courts will pierce the veil "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created," or where the corporate form is being abused to work "fraud or injustice." *Bancec*, 462 U.S. at 629.

Tenam is wholly and directly owned by a Russian company, Tenex. Newton Decl. ¶ 6, ECF No.176-2. Tenex, in turn, is wholly and directly owned by another Russian company, Atomenergoprom. *Id.* ¶ 7. Atomenergoprom, finally, is wholly and directly owned by Russia's state nuclear agency, Rosatom. *Id.*

A brief survey of Supreme Court authority reveals that the sovereignty of Tenam's corporate great-grandparents is unlikely to defeat its strong legal protections. Chabad repeatedly seeks to label Tenam as an "instrumentality" of Russia. *See* Opp'n. 12, 17; ECF No. 180. This is a stretch. *See Dole Food Co.*, 538 U.S. at 474 (holding that "only direct ownership of a majority of shares by the foreign state satisfies the [FSIA's] statutory requirement" defining "instrumentality"). The corporate tiers separating Tenam and Russia prevent an "instrumentality" label under *Dole*. Even if Tenam were an instrumentality, piercing would still be a tall order. *See Bancec*, 462 U.S. at 625–26 (affirming that an "instrumentality's assets and liabilities must be treated as distinct from those of its sovereign in order to facilitate credit transactions with third parties"). Chabad would have to show much more than sovereign ownership to justify satisfying

2

Russian debt with Tenam assets. *See Bancec*, 462 U.S. at 626–27 ("Due respect for the actions taken by foreign sovereigns and for principles of comity between nations . . . leads us to conclude . . . that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.").

Chabad digs deeper to build its case against Tenam, looking to the identities of Tenam's directors, to criminal charging documents, and to the content of Russian statutes. Opp'n 10, 12–13, ECF No. 180. But before following through with a veil-piercing analysis, the Court must first decide whether that analysis would be relevant. Chabad emphasizes that it is not actually seeking to pierce Tenam's corporate veil or to execute on Tenam's assets. Rather, Chabad is seeking discovery to determine if such approaches are viable. Tenam, meanwhile, is adamant that its corporate structure is impregnable and its assets are immune from attachment or execution, rendering any discovery attempts irrelevant and unnecessary.

Tenam's confidence in its corporate and statutory protections is not enough to nip the subpoenas in the bud. "As a general rule, legal victors may engage in broad post-judgment discovery." *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 94 (D.D.C. 2017). A judgment creditor, "[i]n aid of the judgment or execution, . . . may obtain discovery from any person— including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). The scope of federal discovery encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In other words, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014).

Tenam focuses on the boundaries of that scope—namely, that discovery must be directed to matters relevant to Chabad's claim, and that a subpoena cannot be unduly burdensome. Mot. to Quash 6, ECF No. 176-1. The parties' dueling relevance arguments lead to a chicken-and-egg dilemma: discovery must be directed at relevant matters, but those matters cannot be established as relevant until discovery takes place. The FSIA provides little guidance. "[N]o part of the Act expressly address[es] [post-judgment] discovery." *NML Capital*, 573 U.S. at 142 (internal quotations omitted). The Supreme Court, however, did consider the impasse. *Id.* at 144–45. In *NML Capital*, the Court heard a similar argument: "[Defendant] maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property." *Id.* at 144. The Court refused to let the Catch-22 ground plaintiff's discovery efforts before they began: "To be sure, that request is bound to turn up information about property that [defendant] regards as immune. But [plaintiff] may think the same property not immune. In which case . . . the District Court will have to settle the matter." *Id.* at 145.

Tenam draws on the same paragraph from *NML Capital*. Mot. to Quash 7, ECF No. 176-1. "[I]nformation that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place . . . ." *NML Capital*, 573 U.S. at 144. But this truism does not foreclose post-judgment discovery, except in the absurd case where a plaintiff explicitly "sought only information that could *not* lead to executable assets." *Id.* (emphasis added). Chabad's discovery request fits in to a reasonable theory of execution. The as-applied merits of that theory are fair targets for a challenge to attachment or execution, not discovery.

Tenam characterizes Chabad's discovery requests as "overbroad, oppressive, and . . . undu[ly] burden[some]." Mot. to Quash 15, ECF No. 176-1 (citing Fed. R. Civ. P.

4

45(d)(3)(A)(iv)). The requests, Tenam claims, are irrelevant, vague, overbroad, disproportionate. *Id.* at 15–17. It holds out its status as a non-party as further evidence of the undue burden. *Id.* at 16. "The burden of proving that a subpoena duces tecum is oppressive is on the party moving for relief on this ground. The burden is particularly heavy to support a motion to quash as contrasted to some more limited protection." *Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 766 (D.C. Cir. 1965) (internal citations and quotations omitted). "A trial court has broad, but not unlimited, discretion in evaluating the circumstances of a case when considering quashing a subpoena on grounds of oppressiveness. It must carefully examine the circumstances presented to it and, when appropriate, consider the possibility of modifying the subpoena rather than quashing." *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).

This Court has already held that "[t]he quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Flanagan v. Wyndham Int'l Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005). Even in a burden vs. relevance balancing test, courts ought to "err on the side of permissive discovery." *Id.* at 102–03. Indeed, "the Rules often allow extensive intrusion into the affairs of both litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984). If Tenam's emphasis on its independence from Russia is candid, the subpoenas should be easily addressed, yielding little. If Tenam's relationship with its sovereign shareholders runs deeper, however, the burden of the subpoenas cannot be said to be "undue."

Any objections as to the timeliness of Chabad's subpoenas miss the mark. This Court has already authorized Chabad to pursue attachment and execution efforts against Russia and its co-defendant agencies. *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 798 F. Supp. 2d 260,

266–72 (D.D.C. 2011), ECF No. 100. As Chabad has acknowledged, clearing this procedural hurdle against defendants does not amount to a blank check against non-parties. *See* Dec. 3, 2019 Transcript 25:5–9, ECF No. 193. (Chabad affirming that it has "committed to the Court and the Court has included this in past rulings that before we attempt to execute, before we attempt to attach any property under New York law or any other state's law, we will come back to this Court and follow the procedures"). "[C]oncerns related to such enforcement are premature until such time as plaintiff has identified property to attach and execute, provided notice to defendants of such attachment and execution, and given defendants 'reasonable time' to respond." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 128 F. Supp. 3d 242, 245 (D.D.C. 2015). Chabad's subpoenas could be a step closer towards seeking execution or attachment, or they could reveal a dead end. Either way, challenges to the viability of execution are not ripe during the discovery stage.

In a final, one-paragraph argument, Tenam urges this Court to consider the foreign policy implications of allowing Chabad to proceed with discovery. Mot. to Quash 17–18, ECF No. 176-1. This issue has been addressed and dismissed by the Supreme Court and by this Court. *See NML Capital*, 573 U.S. at 146 (Redirecting foreign policy apprehensions "to that branch of government with authority to amend the [FSIA]"); *Agudas Chasidei Chabad of United States*, 128 F. Supp. 3d at 246–49 (considering and dismissing a host of foreign policy arguments). Tenam's attempt to distinguish these circumstances is unpersuasive. *See* Reply 13–14, ECF No. 183.

The Court authorized supplemental briefing on new issues raised during the December 3, 2019 motions hearing. While much of the supplemental briefing rehashed familiar arguments, the Court will address points made as to the viability of 28 U.S.C. § 1610(a)(3) as an execution

6

immunity exception. As a default rule, the property of foreign states is generally immune from execution. 28 U.S.C. § 1609. Section 1610 sets out exceptions to that general rule. Under Tenam's theory, Chabad does not satisfy any exception to the rule, and so would not be able to execute against Tenam even if it was found to be a Russian alter ego. Chabad latches on to subsection (a)(3):

> (a) The property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if— (3) the execution relates to a judgment establishing rights in property which has been taken in violation of international law or which has been exchanged for property taken in violation of international law[.]

28 U.S.C. § 1610(a)(3). So might a future execution attempt against Tenam "relate to" a judgment establishing rights in property which has been taken in violation of international law?

Tenam urges the Court to read "relates to" narrowly. While it does not dispute that property has been taken in violation of international law, Tenam refutes that either the Default Judgment (ordering defendants to return the collection, ECF No. 80) or the Interim Judgment (issuing contempt sanctions against defendants, ECF No. 116) establishes a valid right in that property. The Court cannot agree—both judgments are clearly predicated on Chabad's rights to the stolen collection. In the absence of controlling or on-point precedent, the Court will read "relates to" under its plain meaning. Chabad is not yet seeking execution against Tenam. If it ever does, such execution would not relate to a spontaneous and unilateral declaration of entitlement by Chabad. Rather, it would relate directly to these judgments and the rights they establish. Section 1610(a)(3) is not a roadblock to Chabad's theory of execution.

Chabad has not yet established that Tenam's corporate veil could be pierced. Perhaps it never will. But until it seeks attachment or execution on the judgment, it will not have to. Tenam's motion is accordingly **DENIED**.

It is **SO ORDERED**.

SIGNED this 20th day of December, 2019.

_____
Royce C. Lamberth
United States District Judge

8